# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **RICHARD D. BARTHELEMY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **CITY OF ATLANTA, and** | ) | **CIVIL ACTION FILE** |
| **CHIEF ERIKA SHIELDS, In Her** | ) | **NO.:** _____ |
| **Individual Capacity, DEPUTY** | ) | |
| **CHIEF JEFFREY GLAZIER, In** | ) | **JURY TRIAL DEMANDED** |
| **His Individual Capacity, and** | ) | |
| **MAJOR MICHAEL KREHER, In** | ) | |
| **His Individual Capacity,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | )_____ | |

## PLAINTIFF'S COMPLAINT AND JURY DEMAND

**COMES NOW,** the Plaintiff RICHARD D. BARTHELEMY, and files his Complaint and Demand for Jury Trial as follows:

## NATURE AND PURPOSE

1.

This is an action for discrimination, hostile work environment, tangible employment and retaliation arising out of Title VII of the Civil Rights Act of 1964 as amended, including the Civil rights Act of 1991, 42 U.S.C. § 2000e *et seq.* and 42 U.S.C. 1981A ("Title VII"), as well as under the Equal Protection Clause of the United States Constitution, and state law claims. Sgt. Barthelemy seeks damages

1

and equitable relief for the actions of the City of Atlanta and the individuals within the City of Atlanta Police Department.

2.

Sgt. Barthelemy alleges that all of these actions were taken on account of his race, African American, and that the retaliatory actions were taken against him for engaging in protected activity. Sgt. Barthelemy seeks declaratory and injunctive relief, back pay and front pay, compensatory and punitive damages against the individual Defendants, attorney's fees and costs.

## JURISDICTION AND VENUE

3.

The claims herein present federal questions, and jurisdiction of this Court is predicated under the Fourteenth Amendment, 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. §§ 1331, 1337. This Court also has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

4.

Defendants are subject to venue in this Court pursuant to 28 U.S.C. § 1391 (b), in that one or both Defendants reside in this District, and a substantial part of the events and omissions giving rise to Plaintiff's claims occurred within this District.

## PARTIES

5.

Plaintiff Richard D. Barthelemy ("Sgt. Barthelemy" or "Plaintiff") is, and has been at all times relevant hereto, a citizen of the State of Georgia residing in Cobb County, Georgia.

6.

Defendant City of Atlanta is a municipal corporation doing business in the State of Georgia and is a resident of the State of Georgia and is subject to the jurisdiction of this Court.  The City of Atlanta is subject to the provisions of Title VII.

7.

Defendant City of Atlanta may be served with process through Mayor Kasim Reid at his business address, 55 Trinity Avenue, SW, Atlanta, GA 30303.

8.

Defendant City of Atlanta does business in Georgia, including the employment of Sgt. Barthelemy as a Sergeant in the Atlanta Police Department.

9.

Defendant Chief Erika Shields ("Defendant Shields" or "Chief Shields") resides in the Northern District of Georgia and is being sued in her individual capacity. Chief Shields is the Chief of the Atlanta Police Department and at all

times pertinent to this action was acting under color of state law and as policy and procedure maker of the City of Atlanta. Chief Shields is subject to the jurisdiction of this Court.

10.

Defendant Chief Shields can be served by delivering a copy of the Summons and Complaint at 226 Peachtree Street, SW, Atlanta, Georgia 30303.

11.

Defendant Deputy Chief Jeffrey Glazier ("Defendant Glazier" or "Deputy Chief Glazier") resides in the Northern District of Georgia and is being sued in his individual capacity. Deputy Chief Glazier is the Deputy Chief of the Atlanta Police Department and at all times pertinent to this action was acting under color of state law and as a policy and procedure maker of the City of Atlanta. Deputy Chief Glazier is subject to the jurisdiction of this Court.

12.

Defendant Deputy Chief Glazier can be served by delivering a copy of the Summons and Complaint at 226 Peachtree Street, SW, Atlanta, Georgia 30303.

13.

Defendant Major Scott Kreher ("Defendant Kreher" or "Major Kreher"), a white male, resides in the Northern District of Georgia and is being sued in his individual capacity. Major Kreher is a Major in the Atlanta Police Department and

at all times pertinent to this action was acting under color of state law and as a policy and procedure maker of the City of Atlanta.  Major Kreher is subject to the jurisdiction of this Court.

14.

Defendant Major Kreher can be served by delivering a copy of the Summons and Complaint at 226 Peachtree Street, SW, Atlanta, Georgia 30303.

## **COMPLIANCE WITH ADMINISTRATIVE PREREQUISITES**

15.

On June 28, 2017, as a result of Defendants' continued discriminatory treatment of Sgt. Barthelemy, Sgt. Barthelemy filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). (Exhibit A).  By letter dated September 14, 2017, Sgt. Barthelemy received notification of his right to sue from the EEOC on September 18, 2017. (Exhibit B).  This action is filed within 90 days of Sgt. Barthelemy's receipt of the right to sue notice, and Sgt. Barthelemy has complied with all other conditions precedent to the institution of this lawsuit and the claims herein.

16.

Within the current or preceding calendar year with respect to the discrimination alleged herein, Defendant City of Atlanta employed in excess of 500 employees for at least twenty (20) weeks.

## FACTUAL ALLEGATIONS

### 17.

Sgt. Barthelemy was hired by the City of Atlanta on October 16, 2007. He attended and graduated from the Police Academy within six months and became a patrolman. In September 2014, Sgt. Barthelemy took the test for Sergeant, scored in the top five (5%) percent of the class, became a Sergeant, and was assigned to the Zone 5 Mobile (Morning Watch 1:00 p.m. to 7:00 a.m.). Here, he was responsible for patrol officers, payroll, compliance issues, scheduling and answering calls.

### 18.

In September 2014, Sgt. Barthelemy became Zone 5 Mobile Morning Watch Supervisor until March 2015. From April 2015 to October 2015, Sgt. Barthelemy was the Zone 5 Discretionary Supervisor, Foot Beat (Evening Watch 2:00 p.m. to 10:00 p.m.) for Zone 5. During these periods of time, Sgt. Barthelemy had very good reviews and had no write-ups or disciplinary action taken against him.

### 19.

In November 2015, Sgt. Barthelemy became the Zone 5 Detective Supervisor (Evening Watch), where he stayed until May 2017. In January 2016, Inv. Capitol joined the unit and was supervised by Sgt. Barthelemy. Shortly after

6

Sgt. Barthelemy became the Detective Supervisor, Major Kreher was transferred to Zone 5 as the Zone Commander and became Sgt. Barthelemy's Supervisor.

20.

In March 2017, Detective Capitol ("Det. Capital"), an African American Investigator under Sgt. Barthelemy's command at the time, was summoned to Sgt. Barthelemy's office for a discussion on why he failed to attend a mandatory training. Present in the meeting was Sgt. Henry.  The investigation was prompted by an email sent out by the then Major of Zone 5 Michael S. Kreher.

21.

During the interview Det. Capitol was unable to provide an explanation for his failure to attend a training class.  When he did, he advised that he attended the training but was late. Upon further debriefing Detective Capitol could not advise what supervisor was present during the training he purported to have attended. The Detective advised that he could not remember.  Later that day Det. Capitol admitted that he had not attended the meeting. Det. Capital stated that his reason for not going was that he was exhausted due to Anti-Depressant and other medications he had been prescribed.  Det. Capitol stated that he went to the City Psychologist for help.  Det. Capitol is a U.S Veteran having served on various tours in Asia.

7

22.

Sgt. Barthelemy contacted the Director of the City of Atlanta Psychological Services and spoke to Dr. Bradford, to verify that Det. Capitol was being treated by her.  Bradford advised that Det. Capitol came to her office and told her about his mental disabilities.  Dr. Bradford advised that she offered him a referral to a Veteran's outreach program that he could attend.

23.

Sgt. Barthelemy notified Lieutenant Barth ("Lt. Barth") and Captain Moorman promptly about the untruthful statement (a Priority 1 Offense).  Lt. Barth was sent an internal memorandum regarding the matter. When Sgt. Barthelemy spoke to Capt. Moorman the same week regarding the matter and was advised to begin the necessary paper work to have Det. Capitol terminated.  In an effort to assist Det. Capital, Sgt. Barthelemy spoke to Capt. Moorman and Lt. Barth regarding an alternative to firing Det. Capitol by having him placed on administrative duty.

24.

The following week, Sgt. Barthelemy contacted Sgt. Smith (Internal Affairs) to discuss the matter concerning Det. Capitol. Later that day, Sgt. Smith set up a 3-way conference call with him and Major Murphy (Internal affairs) to discuss the matter. As a result of the conference call, Major Murphy contacted Sgt.

Barthelemy by phone and advised that based on his reasonable recommendation for an alternative solution, she would instruct Sgt. Sturdivant (Personnel Dept.) to place Det. Capitol on administrative duty effective immediately (No Dismissal/With Stipulations).

25.

Within weeks after the conference call with The Internal Affairs Commander, Sgt. Barthelemy was transferred back to Mobile (Morning Watch) in Zone (5) with Tuesday and Wednesdays off days from his previous Sunday and Mondays off. Lt. Barth contacted Sgt. Barthelemy by phone and advised him that Major Kreher advised him that Sgt. Barthelemy is to be transferred effective immediately, to vacate his present office and to promptly report to Zone 5 Mobile Evening Watch. No personnel order was created for this transfer.

26.

Sgt. Barthelemy spoke to his supervisor Lt. Barth about the transfer and was told that it was Major Kreher's decision and it was in part because he had failed to terminate Det. Capital. Sgt. Barthelemy advised Lt. Barth that he would sue the Atlanta Police Department for discrimination because of transfer and file an EEOC complaint against the City.

27.

As a result of the unilateral unjustified transfer, Sgt. Barthelemy began to seek counseling from Dr. Bradford. He advised her that he was going to file an EEOC complaint against Major Kreher because of   Major Kreher's discriminatory actions. Dr. Bradford encourage Sgt. Barthelemy to fight against the discriminatory practices of Major Kreher and shared with him that Major Kreher had thrown the Director of  Employment Assistance Program ("EAP") out of his office when she went to his office to discuss matters concerning another officer who was having difficulty adapting.

28.

Sgt. Barthelemy also went to see Captain Hampton in his Chain of Command seeking an explanation for the sudden transfer back to a position that he previously held when he first became a Sergeant.  Sgt. Barthelemy advised Captain Hampton that if he could not get an answer from Major Kreher regarding the transfer that he would proceed to sue the City for discrimination.   Captain Hampton advised him that he would relay the message to Major Kreher.

29.

On June 28, 2017, Sgt. Barthelemy filed an EEOC complaint against the City of Atlanta and Major Kreher for race discrimination and retaliation. (Exhibit A).

30.

Sgt. Barthelemy was again transferred, this time to Zone 3 as the Mobile Supervisor (Morning Watch) in retaliation for his complaint and filing EEOC charge.  Zone 3 is considered the most dangerous precinct in the City of Atlanta Police Department and according to published reports Zone 3 polices one of the most dangerous neighborhoods in America.[1] It is well known within the City of Atlanta Police Department that Zone 3 is the "dumping ground," often referred to as "GITMO (referring to Guantanamo Bay Incarceration Center), for officers that are considered troublemakers within the Police Department and the transfer is considered a form of punishment or retaliation from high ranking office like Major Kreher.

31.

The work conditions at Zone 3 are deplorable compared to other zones like Zone 5.

32.

Not only is Zone 3 the heaviest violent call volume in the City, and has the least number of supervisors to officer ratio.

---

[1] http://mediatakeout.com/625901. They-compiled-a-list-of-the-25-most-dangerous -neighborhoods.

33.

Major Kreher has not been terminated or otherwise disciplined for his misconduct towards Sgt. Barthelemy.

34.

Sgt. Barthelemy is not the first employee to be discriminated against by Major Kreher, nor the first to report such violation to the City.

**Governmental and Decision Maker Liability Allegations**

35.

Chief Shields is the highest City official with authority to hire, fire, transfer, demote, promote, discipline, and take other personnel actions affecting employees of the Police Department, including Sgt. Barthelemy, made or approved the adverse employment actions in this case.

36.

The employment actions were neither subject to, nor required, higher review or approval.  The employment actions were also not subject to appeal or reversal by any other official or entity.

37.

Defendants Chief Shields, Deputy Chief Glazier, and Major Kreher were the final decision makers with respect to each of the unlawful employment actions giving rise to this Complaint.

12

38.

Defendants Chief Shields, Deputy Chief Glazier and Major Kreher were the final policy makers with respect to each of the unlawful employment actions outlined in this Complaint.

39.

The individual Defendants undertook all of the unlawful conduct giving rise to Sgt. Barthelemy's claims while acting under color of state and local law.

40.

At all times relevant to this Complaint, it was clearly established law that subjecting a subordinate to unlawful discrimination and hostile working environment based upon race violates the Equal Protection Clause and Title VII. At all times relevant to this Complaint, it was clearly established law that a supervisor may not take an adverse employment action against a subordinate because of his engaging in protected activity.

41.

Defendants Chief Shields, Deputy Chief Glazier and Major Kreher had the authority to transfer, demote, promote, discipline, and take personnel actions affecting employees of the Atlanta Police Department, including Sgt. Barthelemy, and either made or ratified the adverse employment actions taken against Sgt. Barthelemy.

**Punitive Damages Allegations**

42.

Defendants Chief Shields, Deputy Chief Glazier and Major Kreher undertook all of the above-pled unlawful conduct intentionally, willfully, and maliciously with respect to Sgt. Barthelemy and his federally protected rights.

43.

Additionally and in the alternative, Defendants Chief Shields, Deputy Chief Glazier and Major Kreher undertook all of the above-pled conduct with reckless disregard for Sgt. Barthelemy and his federally protected rights.

## COUNT I

**DISCRIMINATION AND HOSTILE WORKING ENVIRONMENT (42 U.S.C. § 1983 AGAINST DEFENDANTS CITY OF ATLANTA AND DEFENDANTS CHIEF SHIELDS, DEPUTY CHIEF GLAZIER AND MAJOR KREHER (IN THEIR INDIVIDUAL CAPACITIES)**

44.

The foregoing paragraphs are re-alleged, restated and incorporated herein as though fully set forth herein.

45.

The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution entitles Sgt. Barthelemy to equal protection under the laws regardless of his race.

14

46.

Defendants violated Sgt. Barthelemy's rights to equal protection by, among other things, subjecting him to racial discrimination and hostile working environment, and Defendants Chief Shields, Deputy Chief Glazier and Major Kreher violated his rights to equal protection by taking adverse employment actions against Sgt. Barthelemy.

47.

The conduct of Defendants constitutes unlawful discrimination, based upon race, in violation of the Equal Protection Clause. Additionally and in the alternative, Defendants' unlawful conduct constitutes hostile work environment culminating in an ultimate employment action against Sgt. Barthelemy.

48.

Defendants Chief Shields, Deputy Chief Glazier and Major Kreher undertook all of the unlawful conduct giving rise to Sgt. Barthelemy's claims while acting under color of State and local law.

49.

Defendants Chief Shields, Deputy Chief Glazier and Major Kreher's unlawful conduct violated the above-pled clearly established law.

50.

Defendants have violated Sgt. Barthelemy's federal rights protected by the Federal Constitution and by Federal Statutes or regulations under color of state law, ordinance, regulation, custom or usage of the City of Atlanta in violation of 42 U.S.C. § 1983.

51.

Between March 2013, and present, it was well-settled under the laws and Constitution of the United States that it is illegal for a public employer to adversely alter the terms or conditions of a public employee's employment in retaliation for that public employee's good faith engagement in protected activity.

52.

The violation of Sgt. Barthelemy's rights came about by the actions of Chief Shields and the City of Atlanta under color of regulations, custom, formal or informal policies, policy or usage of the City of Atlanta as described above, as well as the City's custom and policy as set out in APD's SOP's and OPS investigation procedure.

53.

The conduct of Defendant Chief Shields was a callous and willful disregard of Sgt. Barthelemy's constitutional rights, thereby authorizing an award of aggravated, exemplary and punitive damages against him individually.

16

54.

Upon information and belief, Chief Shields, Deputy Chief Glazier and Major Kreher were the final decision-maker acting on behalf of the City of Atlanta when he transferred Sgt. Barthelemy each time.

55.

The conduct of Defendants in discriminating against and retaliating against Sgt. Barthelemy was based upon his race, African American, in violation of Sgt. Barthelemy's rights to equal protection of the laws as granted by the Fourteenth Amendment to the United States Constitution.

56.

This violation of rights was ongoing, and Defendants continued to violate Sgt. Barthelemy's rights by acting under color of state law and local ordinances, regulations, customs, and usages of the City of Atlanta throughout the time period Sgt. Barthelemy was employed by the City of Atlanta.

57.

Defendant City of Atlanta subjected Sgt. Barthelemy to a pattern and practice of racial discrimination, which was un-welcomed, offensive, severe, persistent, abusive, malicious, intentional, willful and otherwise wrongful in violation of Title VII and 42 U.S.C. § 1981. The acts, words, and conduct of Defendant, by and through its agents and employees, acting within the scope of

their employment and agency, evidence racial hatred, while denying Sgt. Barthelemy the right to make and perform a contract under the equal benefit of the law.

58.

As a further proximate result of Defendant's actions, Sgt. Barthelemy has suffered and continues to suffer severe and lasting embarrassment, humiliation, anguish, and other incidental and consequential damages and expenses.

59.

The conduct of Defendants was done in conscious disregard of Sgt. Barthelemy's rights. Therefore, Sgt. Barthelemy is entitled to equitable and injunctive relief, compensatory damages, expenses, and attorney's fees from Defendants in an amount to be determined at trial.

60.

Defendants acted intentionally, willfully and wantonly, or alternatively, negligently or with reckless indifference to Plaintiff's federally-protected rights.

61.

As a direct and proximate result of all of the Defendants' actions, Sgt. Barthelemy has suffered damages, including emotional distress, inconvenience, loss of income and benefits, humiliation and other indignities.

## COUNT II

## DISCRIMINATION AND HOSTILE WORK ENVIRONMENT
## (TITLE VII AGAINST DEFENDANT CITY OF ATLANTA)

62.

The foregoing paragraphs are re-alleged, restated and incorporated herein as though fully set forth herein.

63.

Defendant the City of Atlanta violated Sgt. Barthelemy's rights under Title VI by, among other things, subjecting him to racial discrimination and hostile working environment, taking adverse employment actions against him, and by failing to take reasonable preventative or corrective measures with respect to the unlawful harassing conduct of its high ranking officers.

64.

Defendant the City of Atlanta's conduct constitutes unlawful harassment by creating an unlawful hostile working environment, based upon race, in violation of Title VII.

65.

Additionally, Defendant the City of Atlanta's unlawful conduct constitutes harassment culminating in tangible employment actions against Sgt. Barthelemy.

## COUNT III

### TITLE VII – RETALIATION
### (AGAINST DEFENDANT CITY OF ATLANTA)

66.

The foregoing paragraphs are re-alleged, restated and incorporated herein as though fully set forth herein.

67.

Title VII prohibits employers from retaliating against employees who oppose any practice made and unlawful employment practice or because an employee makes a charge, testified, assisted or participated in an investigation (42 U.S.C. §2000e(a)).

68.

Defendants retaliated against Sgt. Barthelemy for complaining about participating and opposing discriminatory practices made unlawful by Title VII of the 1964 Civil Rights Act, 42 U.S.C. §2000e et. seq., in violation of that statute. Defendants intentionally retaliated against Sgt. Barthelemy and/or acted with deliberate disregard as to whether their actions were unlawfully retaliatory.

69.

Defendants' retaliatory acts include, but is not limited to, transfer back to his first position as a Sergeant, transfer to Zone 3 and filing an OPS complaint against him.

20

70.

A causal connection exists between Sgt. Barthelemy's protected activity and the adverse employment action set out above. After Sgt. Barthelemy refused to terminate Det. Capital who suffered from Post Traumatic Stress due to his service in the military, his threats to file suit because of Major Kreher's discriminatory actions and an EEOC complaint and his filing of his EEOC complaint.

71.

As a result of Defendants aforesaid violation of Title VII, Sgt. Barthelemy has suffered and continues to suffer economic injury, including, but not limited to, loss of salary.

72.

The change of schedule created a tremendous burden to Sgt. Barthelemy's young family, which includes a 16 month old daughter and a wife (46 years old), who is presently experiencing Post-Partum issues and who was recently diagnosed with issues involving her thyroid glands. The Post-Partum symptoms have been enhanced by the family's change of schedule by early morning hour shift. Sgt. Barthelemy can no longer be present with his wife when she experiences nightmares occasionally when she sleeps.

73.

Morning watch hours have destroyed Sgt. Barthelemy's potential for working both his Sunday extra jobs and overtime.  Consequently, Sgt. Barthelemy works fewer hours and earns far less money.  The hours have affected Sgt. Barthelemy's sleeping pattern and he often is unable to sleep from experiencing insomnia

74.

As a result of Defendants aforesaid violation of Title VII, Sgt. Barthelemy has suffered and continues to suffer mental anguish and emotional harm.

75.

As a result of Defendants aforesaid violation of Title VII, Sgt. Barthelemy has suffered and continues to suffer physical injury precipitated by the aforesaid mental anguish and emotional harm.

## COUNT IV

### NEGLIGENT SUPERVISION AND RETENTION
### (AGAINST DEFENDANT CITY OF ATLANTA)

80.

The foregoing paragraphs are re-alleged, restated and incorporated herein as though fully set forth herein.

22

81.

As an employer, the City of Atlanta has a duty "to exercise ordinary care not to hire or retain an employee the employer knew or should posed a risk of harm to others where it is reasonably foreseeable from the employee's tendencies or propensities that the employee could cause the type of harm sustained by the Plaintiff." *Monroe v. Universal Health Services, Inc.*, 596 S.E.2d 604, 606 (GA 2004).

82.

At all times relevant hereto, Defendant City of Atlanta knew of should have known that Major Kreher a decision maker was using improper motives to assign, transfer, promote and intimidate employees.

83.

In 2009, Major Kreher threatened to beat former Mayor Shirley Franklin, an African American female, in the head with a baseball bat.

84.

Numerous lawsuits were filed and complaints were made to Defendant City of Atlanta in regard to Major Kreher, including complaints to the Office of Professional Standards (OPS), by citizens and other officers regarding Major Kreher's discriminatory conduct, in response to which, Defendant City of Atlanta failed to act.

85.

Defendant City of Atlanta negligently supervised and retained Major Kreher which allowed him to carry out these discriminatory acts as described above.

86.

Defendant City of Atlanta ratified Major Kreher's conduct by continuing to promote him from Lieutenant to his current position as Deputy Chief despite complaints about his discriminatory actions.

## COUNT V

### INTENTIONAL INFLICTION OF EMOTIONAL STRESS
### (AGAINST DEFENDANTS CHIEF SHIELDS, DEPUTY CHIEF GLAZIER AND MAJOR KREHER (IN THEIR INDIVIDUAL CAPACITIES)

87.

The foregoing paragraphs are re-alleged, restated and incorporated herein as though fully set forth herein.

88.

Major Kreher intentionally, maliciously, wantonly and in gross and reckless disregard for Sgt. Barthelemy's health and safety, engaged in extreme and outrageous conduct when he subjected Sgt. Barthelemy to racial discrimination and retaliation.

24

89.

As a direct and proximate result of Major Kreher's wrongful conduct, Sgt. Barthelemy suffered great emotional distress, mental anguish, loss of income, humiliation, and other indignities.

90.

The emotional distress suffered by Sgt. Barthelemy was so severe that it prompted Sgt. Barthelemy and his wife to seek psychological counseling sessions with the City of Atlanta.

## COUNT VI

### PUNITIVE DAMAGES
### (AGAINST DEFENDANTS CHIEF SHIELDS, DEPUTY CHIEF GLAZIER AND MAJOR KREHER)

91.

The foregoing paragraphs are re-alleged, restated and incorporated herein as though fully set forth herein.

92.

Defendants Chief Shields, Deputy Chief Glazier and Major Kreher undertook their unlawful conduct intentionally and maliciously with respect to Sgt. Barthelemy and his federally protected rights, entitling Sgt. Barthelemy to recover punitive damages against them.

25

93.

Alternatively, Defendants Deputy Chief Glazier and Major Kreher undertook their unlawful conduct recklessly with respect to Sgt. Barthelemy and his federally protected rights, entitling Sgt. Barthelemy to recover punitive damages against them.

94.

The above-described actions were willful, wanton, intentional, malicious and oppressive. These acts were accomplished with reckless disregard so that punitive damages in an amount to be determined by the enlightened conscience of a jury should be awarded to Sgt. Barthelemy to punish Defendant Chief Shields and to deter her from repeating such conduct.

**WHEREFORE**, Plaintiff seeks the following relief:

1. Compensatory make-whole relief for Plaintiffs economic damages;

2. Compensatory damages for mental anguish;

3. Compensatory damages for the physical manifestations of the aforesaid mental anguish and emotional harm;

4. Punitive damages;

5. Attorney's fees, expert witness fees, costs and disbursements of this action;

6.    Appropriate declaratory and injunctive relief;

7.    Interest from the date of filing until judgment is entered and post-judgment interest as may be proper;

8.    Front pay in an amount to be determined by the Court; anxiety, humiliation and pain and suffering for which Defendant City of Atlanta is liable.

9.    Such other and further relief as this Court deems appropriate; and

10.    Plaintiff demands TRIAL BY JURY.


This 12th day of December, 2017.

Respectfully submitted,

**THE BURKE LAW GROUP, LLC**

*/s/ E. Earle Burke_____*
E. Earle Burke
Ga. Bar No. 095550
*Attorney for Plaintiff*

199 Peters Street, Suite A
Atlanta, Georgia 30313
Telephone (404) 688-1210
Facsimile (404) 688-1251
Email: eburke@burkelawatl.com

27